UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| CHRISTOPHER RAMBO, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 10-116-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KAREN F. HOGSTEN, | ) | **& ORDER** |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

What is a court to do when the Bureau of Prisons ("BOP") calculates an inmate's sentence in a way that seems unfair? Can the court order the BOP to recalculate the inmate's sentence to more closely match the court's conception of fairness, or must the court defer to the BOP's determination? That is the question at the heart of Christopher Rambo's habeas corpus petition.

Rambo is currently serving a 120-month federal sentence imposed by the federal district court in Colorado. That court originally sentenced Rambo to 300 months in prison after he pled guilty to armed robbery. But the Tenth Circuit vacated that sentence, and on remand, Rambo negotiated a new, more favorable plea agreement. The district court imposed a significantly reduced sentence of 120 months, which it ordered to run concurrently with an eight-year state sentence that Rambo was serving for the same crime. Appealing to the Tenth Circuit was enormously beneficial for Rambo. But it also took time—more than a year, in fact. The sole question in this case is whether Rambo should receive prior custody credit against the 120-month federal sentence that he is currently serving for the time that his first federal sentence was on

appeal. Rambo says that he should, and his position has some intuitive force. After all, if the district court had gotten it right the first time, presumably it would have imposed the 120-month concurrent sentence first. In that case, Rambo would unquestionably be entitled to the credits he seeks. But the BOP denied Rambo's request for prior custody credit for the time his case was on appeal. According to the BOP, because his federal sentence never started to run, Rambo spent that time serving his state sentence and only his state sentence. Therefore, the BOP determined that Rambo was not entitled to prior custody credit for that period.

Rambo has challenged the BOP's determination by filing a habeas corpus petition in this Court under 28 U.S.C. § 2241. R. 2. The respondent, Warden Karen Hogsten, answered, R. 7, and Rambo replied, R. 11. Although the Court agrees with Rambo that there is something seemingly unfair about the BOP's refusal to grant him the prior custody credits he seeks—he is arguably paying the price for the time it took the Tenth Circuit to correct the district court's error—the Court may not order the BOP to recalculate Rambo's sentence simply because the Court believes that another computation might be more fair. The BOP's calculation of Rambo's sentence accords with both law and agency policy. Therefore, the Court must dismiss Rambo's habeas petition.

## BACKGROUND

On March 26, 2002, Sheriff's deputies in Weld County, Colorado arrested Rambo and charged him with participating in two armed robberies. Rambo was on state-supervised parole at the time. The State of Colorado revoked Rambo's parole on May 10, 2002, and he served a prison term for violating his parole lasting until November 13, 2002. Rambo remained in state

custody after his parole violation sentence ended to face charges for the armed robberies. On

January 9, 2003, the state dismissed some of the charges against Rambo in lieu of federal

prosecution. United States Marshals temporarily took Rambo into federal custody on a writ of

habeas corpus *ad prosequendum*, which demands that a defendant be produced before a federal

court to face criminal charges. *See United States v. Mauro*, 436 U.S. 340, 357-58 (1978). In the

federal case, Rambo filed a motion to suppress statements he made to police under *Miranda v.*

*Arizona*. The district court denied the motion to suppress and Rambo pled guilty to the federal

charges. The district court sentenced Rambo to 300 months in prison on May 23, 2003. Rambo

appealed the district court's denial of his motion to suppress to the United States Court of

Appeals for the Tenth Circuit.

After the district court handed down its 300-month sentence, U.S. Marshals returned

Rambo to state custody. On July 2, 2003, the state court sentenced him to eight years in prison

on the remaining state charges. The state court judge directed that the state sentence was to run

concurrently with Rambo's 300-month federal sentence. Rambo began serving his state sentence

in the custody of the Colorado Department of Corrections.

In the meantime, on April 23, 2004, the Tenth Circuit reversed Rambo's federal

conviction and sentence, holding that the district court had improperly denied Rambo's motion

to suppress his incriminating statements. *United States v. Rambo*, 365 F.3d 906, 907 (10th Cir.

2004). The Tenth Circuit remanded Rambo's case back to the district court. U.S. Marshals again

took Rambo into federal custody under a writ of habeas corpus *ad prosequendum* on June 9,

2004. Rambo withdrew his initial guilty plea and negotiated a new, more favorable plea

agreement. On August 19, 2004, the district court sentenced him to 120 months in prison, to run concurrently with his eight-year state sentence.

The U.S. Marshals again returned Rambo to state custody. Rambo completed serving his state sentence on August 26, 2008. The State of Colorado then transferred him to federal custody to serve the balance of his 120-month federal sentence. The BOP informed Rambo that it had calculated his federal sentence as follows: The sentence began on August 19, 2004—the day the district court imposed it—and Rambo would receive credit for 230 days that he spent in state custody awaiting trial, from November 14, 2002, (the day after his state sentence for his parole violation ended) to July 1, 2003, (the day before the state court imposed its eight-year sentence). But Rambo believes that he should receive more prior custody credit. On May 5, 2009, he filed an administrative grievance seeking credit for the time he served in state custody between July 3, 2003, (the day after the state court imposed its sentence) and August 18, 2004, (the day before the district court imposed the second federal sentence). The BOP rejected Rambo's request, and Rambo exhausted all of the available administrative appeals. *See* R. 2, Attach 2. Rambo then filed a § 2241 habeas petition in this Court challenging the BOP's refusal to grant him prior custody credit for the period from July 3, 2003, to August 18, 2004.

## DISCUSSION

The sole question in this case is whether Rambo is entitled to 412 days of prior custody credit for the period from July 3, 2003, to August 18, 2004. Because Rambo is challenging the manner in which the BOP is executing his sentence, rather than the validity of the sentence itself, his § 2241 habeas petition is the appropriate vehicle. *See Capaldi v. Pontesso*, 135 F.3d 1122,

1123 (6th Cir. 1998). For the reasons that follow, the Court will deny Rambo's habeas petition. He is not entitled to the prior custody credits he seeks because he did not spend a single day of the period from July 3, 2003, to August 18, 2004, serving his federal sentence.

Rambo is currently serving the 120-month sentence that the district court imposed on August 19, 2004, after the Tenth Circuit vacated his first sentence. The court ordered that sentence to run concurrently with Rambo's state sentence. R. 7, Attach. 6. Although it was the court that imposed the sentence, it is the BOP's job to determine how the sentence is executed—*i.e.*, when the sentence commenced and whether Rambo is entitled to any prior custody credits. *See McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993) ("[T]he Attorney General [acting through the BOP], not the court, has the authority to compute sentence credits for time in detention prior to sentencing."); *United States v. Gonzalez*, 192 F.3d 350, 353 (2d Cir. 1999) ("The Bureau of Prisons, and not the courts, determines when a defendant's sentence starts and whether the defendant should receive credit for any time spent in custody.").

The BOP has a policy addressed to Rambo's exact situation—where the inmate's first sentence is vacated on appeal and the court subsequently imposes a new sentence. BOP Policy Statement 5880.28 provides that "[i]f a vacated sentence results in a retrial and subsequent resentencing, the date the sentence will begin is based on the final judgment, and any previous creditable time shall be applied as prior custody time credits." R. 2, Attach. 2 at 21. Using this method, the BOP calculated that Rambo's 120-month concurrent sentence began to run on the day that it was imposed—August 19, 2004. R. 7, Attach. 2 ¶ J. The BOP awarded Rambo prior custody credit for the time he spent in state custody from November 14, 2002, to July 1, 2003.

R. 2, Attach. 2 at 15-16. These credits are known as "Willis" credits, so-named for the decision

in *Willis v. United States*, 438 F.2d 923, 925 (5th Cir. 1971). Under *Willis*, a prisoner who faces

both a state sentence and a longer federal sentence receives credit for time he spends in non-

federal presentence custody after the federal offense up to the date that the first sentence begins

to run, federal or non-federal. *Id.*; R. 2, Attach. 2 at 16.

But Rambo claims that he should get more credit. He argues that he should also receive

credit for the period from July 3, 2003, to August 18, 2004. During that time, the district court

had already imposed his first 300-month federal sentence (on May 23, 2003) and Rambo was

serving his eight-year state sentence in the custody of the Colorado Department of Corrections.

Whether Rambo is entitled to credit for this period depends on whether his first federal sentence

had commenced. If his first federal sentence had already commenced, then Rambo would have

spent July 3, 2003, to August 18, 2004, in service of his federal sentence, and the BOP's Policy

Statement 5880.28 would require crediting the time against Rambo's new sentence. *See* R. 2,

Attach. 2 at 21 (directing that "all time spent [serving the sentence] prior to the date the new term

began is credited as 'prior custody credit'"). But if the first federal sentence had not yet

commenced, 18 U.S.C. § 3585(b) would prohibit crediting Rambo with the time. That section

provides that a "defendant shall be given credit toward the service of a term of imprisonment for

any time he has spent in official detention prior to the date the sentence commences . . . *that has*

*not been credited against another sentence*." 18 U.S.C. § 3585(b) (emphasis added). Because

the period from July 3, 2003, to August 18, 2004, clearly was credited against Rambo's state

sentence, he would not be eligible to receive credit against his federal sentence for that same period.

Unfortunately for Rambo, his first federal sentence never started to run. That is because Rambo was still in the primary custody of the State of Colorado when the district court imposed his first sentence on May 23, 2003. When a defendant violates the laws of two different sovereigns, the rule is that "the sovereign[] which first arrests [him] acquires the right to prior and exclusive jurisdiction over him." *In re Liberatore*, 574 F.2d 78, 89 (2d Cir. 1977) (citing *Ponzi v. Fessenden*, 258 U.S. 254, 260-61 (1922)). Rambo violated both state and federal law, and Colorado authorities arrested him first. Therefore, Colorado obtained primary custodial jurisdiction over Rambo, which it maintained until he completed serving his state sentence on August 26, 2008. *See id.* ("[P]lenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty.").

Because Colorado retained primary custody over Rambo until he finished serving his state sentence on August 26, 2008, his first federal sentence could not commence prior to that date. *See United States v. Wells*, 473 F.3d 640, 645 (6th Cir. 2007); *Silva-Rodriguez v. O'Brien*, No. 7:09-cv-00497, 2010 WL 2326539, at *3 (W.D. Va. June 9, 2010) (previously imposed federal sentence did not commence until defendant was released from state custody and transferred to federal custody). The commencement of a federal sentence is determined by 18 U.S.C. § 3585(a), as interpreted and applied by the BOP. *See Wells*, 473 F.3d at 645. Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is

7

received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Although Rambo appeared before the federal court when it imposed his first sentence on May 23, 2003, he was not in federal *custody* for purposes of § 3585(a). "[T]he law on this point is clear: a prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the prisoner." *Rios v. Wiley*, 201 F.3d 257, 274 (3d Cir. 2000); *see also Silva-Rodriguez*, 2010 WL 2326539, at *2 ("Lending an inmate via a writ of habeas corpus *ad prosequendum* to another jurisdiction does not relinquish a sovereign's primary jurisdiction."). Federal authorities only "borrowed" Rambo from state custody via a writ of habeas corpus *ad prosequendum*. Doing so did "not affect a transfer of custody," *United States v. Evans*, 159 F.3d 908, 911 (4th Cir. 1998), and federal authorities returned Rambo to state custody immediately after the district court imposed its sentence. Accordingly, because Rambo was not in primary federal custody when the district court imposed his first sentence, that sentence did not begin to run when it was imposed. 18 U.S.C. § 3585(a). It could not begin to run until Rambo was released from state custody and transferred to federal custody.

The Sixth Circuit's decision in *United States v. Quintero*, 157 F.3d 1038 (6th Cir. 1998), is not to the contrary. In that case, the Sixth Circuit held that "18 U.S.C. § 3584(a) does not authorize district courts to order a sentence to be served consecutively to a not-yet-imposed state sentence." *Id.* at 1039. The *Quintero* decision rested on the text of § 3584(a), which the court interpreted to "only authorize[] district courts to impose concurrent or consecutive sentences if

the court either imposes multiple terms of imprisonment on the defendant at the same time or imposes a sentence on a defendant who is 'already subject to an undischarged term of imprisonment.'" *Id.* at 1040 (quoting § 3584(a)). According to Rambo, *Quintero* prohibits a federal sentence from running consecutively to a not-yet-imposed state sentence. R. 11 at 3. Rambo's reading of *Quintero* is incorrect. As the Sixth Circuit has subsequently clarified, *Quintero* only "established that a district court cannot *specify* whether a sentence will run consecutively . . . to another sentence that has *not yet* been imposed; the case does not stand for the proposition that the sentences cannot *run* consecutively." *United States v. Custard*, No. 99-6239, 2000 WL 1290338, at *2 (6th Cir. Sept. 5, 2000) (emphasis added).

The inmate in *Custard* was in the same position as Rambo. State authorities arrested him first. Federal authorities then borrowed him, the federal court imposed a sentence, and then federal authorities returned him to state custody. The state court subsequently imposed its sentence. *Id.* at *1. The Sixth Circuit held that the inmate's federal sentence would not begin until he finished serving his state sentence and entered federal custody. *Id.* at *2. The court rejected the inmate's argument that *Quintero* prohibited his federal sentence from running consecutively to his later-imposed state sentence. As the court explained, *Quintero* only prohibited the district court from *specifying* that its sentence would run consecutively to any yet-to-be-imposed state sentence. That is because the federal court had no way of knowing for sure if the state court was going to impose a sentence, and if so, what its terms would be. *Id.* But *Quintero* did not change the rule that the inmate's federal sentence could not commence until he left state custody and entered federal custody.

Rambo's second federal sentence, of course, is different. The district court specifically

ordered that 120-month sentence to run concurrently to Rambo's state sentence. Therefore, the

BOP granted Rambo a *nunc pro tunc* designation, meaning it designated the Colorado state

prison as the place of service for Rambo's second federal sentence under 18 U.S.C. § 3621(b).

R. 2, Attach. 2 at 15; s*ee Rogers v. United States*, 180 F.3d 349, 356-57 (1st Cir. 1999); *Barden*

*v. Keohane*, 921 F.2d 476, 480 (3d Cir. 1990). Section 3621(b) allows the BOP to "designate

any available penal or correctional facility" as "the place of the prisoner's imprisonment . . . ,

whether maintained by the Federal Government or otherwise." This designation allowed

Rambo's second sentence to commence on the day that it was imposed, even though he was still

in state custody. But the district court did not order his first federal sentence to run concurrently

with his state sentence. Therefore, under 18 U.S.C. § 3584(a), it was presumed to run

consecutively. After the U.S. Marshals returned Rambo to state custody, his first federal sentence

laid dormant, ready to spring into action after Rambo finished serving his state sentence and

entered federal custody. Accordingly, Rambo spent July 3, 2003, to August 18, 2004, in service

of his state sentence and *only* his state sentence. Under 18 U.S.C. § 3585(b), he may not receive

credit for that time period against his federal sentence. Doing so would constitute improper

double counting. *See United States v. Wilson*, 503 U.S. 329, 337 (1992); *Hess v. Hogsten*, No.

10-160-ART, 2010 WL 3633978 (E.D. Ky. Sept. 14, 2010).

It may seem strange, or even unfair, that Rambo's first federal sentence did not commence

when it was imposed. After all, Rambo was in prison. But he was in a *state* prison. For

purposes of determining when a federal sentence commences, there are only two places in the

world—the facility where the inmate is to serve the federal sentence and everywhere else. Under 18 U.S.C. § 3585(a), a federal sentence does not commence until the inmate "is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." Surely, if the federal court imposed its sentence and then Rambo went to Jamaica for four years, no one would contend that his sentence began on the date that it was imposed. Of course, Rambo was not in Jamaica, he was in state custody. But the critical point is that he was *not* in federal custody.

This is not to say, however, that an inmate can never serve a federal sentence in state prison. To the contrary, as previously explained, the BOP can designate a state prison as the place of a service for a federal sentence. 18 U.S.C. § 3621(b). But the decision whether to make this designation rests entirely with the BOP. *See Hunter v. Tamez*, No. 09-11026, 2010 U.S. App. LEXIS 20435, at *11-12 (5th Cir. Oct. 4, 2010); *Barden*, 921 F.2d at 483. The record in this case shows that the BOP considered Rambo's request and rejected it. That is the end of the matter. Accordingly, Rambo's first federal sentence never started to run, and Rambo spent all 412 days serving only his state sentence.

But hold on a second. Didn't the Colorado state court order that Rambo's eight-year state sentence (imposed on July 2, 2003) run concurrently with his first federal sentence (which had already been imposed on May 23, 2003)? Yes it did. But the state court's declared intent cannot alter the statutes and rules that dictate when a federal sentence commences. Federal law is, after all, supreme to state law. U.S. Const., art. VI, cl. 2. "While a state court may express its intent that a defendant's state sentence run concurrently with a previously imposed federal sentence, this

intent is not binding on federal courts or the BOP." *United States v. Allen*, 124 F. App'x 719, 720 (3d Cir. 2005). "[N]either the federal courts nor the Bureau are bound in any way by the state court's direction that the state and federal sentences run concurrently." *Barden v. Keohane,* 921 F.2d 476, 478 n.4 (3d Cir. 1990) (citing U.S. Const., art. VI, cl. 2); *see also Hunter,* 2010 U.S. App. LEXIS 20435, at *7-13; *Banks v. Wilson*, No. 09-350, 2009 WL 5125282, at *4 (E.D. Ky. 2009). Under federal law, Rambo's first federal sentence did not begin to run when the district court imposed it. And it was not running when the state court imposed its sentence five weeks later. Therefore, although the state court ordered its sentence to run concurrently with Rambo's federal sentence, there simply was no federal sentence for it to run concurrently with. *See Simms v. United States*, No. 08-43, 2009 WL 3061994, at *4 (E.D. Ky. Sept. 21, 2009) ("[W]hile the state court possesses the authority to order the *state sentence* to *run* concurrently with the existing federal sentence, it has no power to thereby cause the federal sentence to *commence* until the state sentence has expired.").

The Court recognizes that, in some sense, this result may seem intuitively unfair. After all, if the federal court had gotten it right the first time, presumably it would have imposed the 120-month concurrent sentence instead of the 300-month consecutive sentence when it first sentenced Rambo on May 23, 2003. If that had been the case, Rambo's federal sentence would have started to run on that day, and Rambo unquestionably would be entitled to the custody credits that he claims. In other words, the argument that Rambo's second sentence should "relate back" to the date of his first sentence has some intuitive force. And the BOP certainly could calculate Rambo's sentence in that manner. But the BOP has adopted a different approach.

Under Policy Statement 5880.28, when an inmate's first sentence is vacated on appeal and the court retries and resentences him, the BOP calculates his sentence based on the date that the court imposes the second sentence. The BOP then grants prior custody credit for time that the inmate has already spent in federal custody. Applying this policy to Rambo's case, the BOP determined that Rambo's 120-month concurrent sentence began when it was imposed. The BOP then granted Rambo *Willis* credits for the period from November 14, 2002, to July 1, 2003. R. 2, Attach. 2 at 16. But Rambo is not entitled to prior custody credit for the 412 days from July 3, 2003 to August 18, 2004, because he spent that time serving his state sentence and only his state sentence (remember his previous sentence was consecutive).

The BOP's Policy Statement and its calculation of Rambo's sentence deserves deference from the Court. The BOP is "the agency charged with administering" the statutes concerning the commencement of and credit towards federal prison sentences, namely 18 U.S.C. § 3585. *Reno v. Koray*, 515 U.S. 50, 60 (1995). Because Policy Statement 5880.28 is a "permissible construction of the statute," *id.* (quoting *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984)), it is entitled to "some deference." *Id.* Nothing in § 3585 requires the BOP to calculate a sentence that the district court imposes after a prior sentence is vacated on appeal as relating back to the date of the first sentence. Had he not been serving time for a state sentence, this would be a different case. But he was and thus the BOP was free to disregard this time in its calculation.

Accordingly, the BOP has the authority to calculate Rambo's sentence using the method specified in Policy Statement 5880.28. The Court cannot substitute its own calculation for the

13

BOP's considered policy, even if the Court considers the BOP's calculation of Rambo's sentence to be somewhat unfair. Unfair and illegal are two different things, and Policy Statement 5880.28 assuredly is not illegal. And at any rate, any unfairness to Rambo is quite minimal in comparison with the huge benefit that he received after the Tenth Circuit vacated his first sentence. Rambo's second federal sentence was both significantly shorter than his first *and* the district court ordered it to run concurrently to his state sentence instead of consecutive like the original sentence. This allowed Rambo to spend his next four years in state custody serving *both* his state and his federal sentences. Under his first federal sentence, Rambo would have had to serve 300 months of federal prison time after he finished serving his state prison sentence on August 26, 2008. But under his current sentence, he only has to spend 64 additional months in federal prison. Rambo has received all of the benefit from his successful appeal to which he is entitled. Therefore, his petition for a writ of habeas corpus seeking additional prior custody credit will be denied.

## CONCLUSION

For these reasons, it is **ORDERED** as follows:

(1)     Rambo's petition for a writ of habeas corpus, R. 2, is **DENIED**.

(2)     This action will be **DISMISSED** and **STRICKEN** from the Court's

docket.

(3)     Judgment shall be entered contemporaneously with this Order in favor

of the Respondent, Karen F. Hogsten.

This the 17th day of November, 2010.

Signed By:

*Amul R. Thapar*   AT

United States District Judge